### SCHMID et al. v. ALICE BANK & TRUST CO.

#### No. 7920.

Circuit Court of Appeals, Fifth Circuit.

Nov. 24, 1936.

C. R. Fix and C. J. Schmid, as a partnership of Fix & Schmid, upon a promissory note for $14,091.69 dated December 8, 1932, due on demand with interest from date at 10 per cent. and for 10 per cent. as attorney's fees, all as therein promised, acknowledging credits of $1,102 and $2,415.22 from a sale of collateral· securities. C. R. Fix and C. J. Schmid as aliens joined in a petition for removal to the District Court of the United States, each signing the affidavit therefor. In the District Court Fix does not appear to have done anything further, but Schmid filed an answer for himself and the firm, which recited that Fix had not been served and denied all the allegations of the petition and by a cross-action set up that the firm in the fall of 1932 were engaged in buying cotton, doing their banking with Alice Bank & Trust Company, which advanced money on drafts for the cotton purchased, the agreement being that the Bank should have a lien on the cotton purchased, with a right to have the cotton sold whenever the Bank deemed itself insecure, but only after notice to defendants and after giving them a reasonable time, to wit, 90 days, to secure the indebtedness and prevent a sale of the cotton and other collateral; that 1,097 bales of cotton and 200 shares of stock in Continental Oil Company of Delaware were thus in the hands of the Bank on December 9, 1932, when without notice and in violation of the agreement it sold the cotton and stock at a very low price, defendants not learning of it until May, 1933, by which time the market price had greatly increased, but the property disposed of had passed beyond recall, with a loss to the defendants of about $50,000; it being alleged that they could and would, had notice been given them, either have paid or secured their indebtedness. The Bank replied that the cotton and stock were turned over to it under written agreements giving full power to do what was done and, denying that defendants were entitled to any notice, it set up that they were warned to liquidate the collaterals at once or the Bank would do so. The verdict covers the cross-action only: "On the cross-action of Fix & Schmid and C. J. Schmid we, the jury, find in favor of the plaintiff, Alice Bank & Trust Company, and against the defendants, Fix & Schmid and C. J. Schmid." The judgment entered thereon recites that it was made known to the court that service of citation had

Robt. E. Cofer and John D. Cofer, both of Austin, Tex., and Tillman Smith, of Corpus Christi, Tex., for appellants.

Jacob S. Floyd, of Alice, Tex., and H. S. Bonham, of Corpus Christi, Tex., for appellee.

Before FOSTER, SIBLEY, and HOLMES, Circuit Judges.

SIBLEY, Circuit Judge.

Alice Bank & Trust Company, a corporation of Texas, sued in a state court

never been obtained upon C. R. Fix, and upon motion of plaintiff said cause was dismissed as to said defendant C. R. Fix personally, and that C. J. Schmid for himself and the partnership had in open court admitted liability on the note for the amount sued for, and claimed the right to open and conclude the evidence and argument, which was granted by the court; and on that admission and the verdict a recovery was adjudged against Schmid and the firm for the amounts sued for.

On this appeal it is first contended that no judgment can lawfully be entered against the firm since the plaintiff has voluntarily dismissed its suit against Fix. When all the partners are not served, articles 2033 and 2223 of the Revised Statutes of Texas authorize a judgment against the firm and the partners who are served; but the Supreme Court in Glasscock v. Price, 92 Tex. 271, 274, 47 S.W. 965, and McManus v. Cash & Luckel, 101 Tex. 261, 108 S.W. 800, has interpreted the statutes in such wise that if the plaintiff dismisses the unserved partner from the suit, there can be no judgment against the firm. The District Judge perhaps considered that since the firm was complaining against the Bank by the cross-action, it was still in court and consequently subject to have its liabilities as well as its rights adjudicated, and there seems much good sense in that position. Since, however, the judgment is to be reversed, and since its recital is the only evidence that the plaintiff has voluntarily dismissed Fix from the suit, we leave the matter open for further consideration upon the next trial.

The necessity for reversing the judgment grows out of the instructions under which the jury rendered their verdict. The paper dated September 19, 1932, under which the Continental Oil stock was deposited with the Bank as collateral provided that if the indebtedness to the Bank be not paid at maturity, this or any substituted or additional collateral might be sold without notice. It also provided that if the market price of collaterals before maturity of the debt should go lower, additional collateral to make up the depreciation should on demand be deposited within twenty-four hours, and if not done the Bank could declare the indebtedness due and payable and exercise its right of sale. On November 5, 1932, a paper was made by Fix & Schmid purporting to assign to the Bank 1,097 bales of cotton sold "on call" to Anderson-Clayton Company concluding thus: "This assignment is made for the purpose of applying on our account to said Bank, and said Bank is hereby authorized to handle said cotton in any manner they may feel justified." On December 8, 1932, the Bank asked for and received the note sued on, given in the firm's name by Schmid, in liquidation of their indebtedness which theretofore had stood as an overdraft. The Bank's position was improved thereby not only by the liquidation of the debt, but by the promise to pay 10 per cent. interest and 10 per cent. attorney's fees. The exact language of the note is not before us, for it was not included in the bill of exceptions signed by the judge nor exhibited in the pleadings. We must assume, therefore, that it was, as alleged, payable on demand, and contained no further agreements touching the handling of the collaterals. But Schmid testifies that in connection with its making the Bank agreed that the collaterals would not be closed out except upon a reasonable notice of ninety days to enable him to communicate with and get aid from his father, who resided in Switzerland. Witnesses for the Bank deny such an agreement, making an issue for the jury. A letter from the Bank dated in April, 1933, refers to an indulgence of ninety days, to begin at the end of November, in which to get the father's indorsement, but it mentions the amount left owing after the closing out of the collaterals. We are of opinion that the paper of November 5th relating to the cotton operated neither as a pledge nor as a mortgage of any bales of cotton, for it appears that the bales referred to in it had already been sold and delivered to Anderson-Clayton Company and partly paid for by them, but under a contract that they would settle finally for them according to the price of cotton on any day that Fix & Schmid should call for payment, protecting themselves meanwhile by margins put up by the latter. The paper of November 5th was intended to and did operate to put the Bank in the place of Fix & Schmid in thus calling for the final payment and receiving it, and it was accompanied by a letter from Fix & Schmid to Anderson-Clayton Company assuring them of the Bank's authority so to do. The conduct of the parties, however, makes it plain that the Bank received the instrument and the power

which it conferred as a trust to execute it in good faith according to its best judgment and apply the receipts to the indebtedness of Fix & Schmid. There was no effort to execute either this power or that in the agreement of September 19th until after the note was made on December 8th. No reason appears why on this latter date the parties could not by a parol agreement alter or supersede their previous collateral agreements as Schmid testified was done, and it is reasonable to conclude that in making the note on December 8th the parties did not intend an immediate closing of the business. What their agreements were became a question for the determination of the jury, and the verdict was not, as appellee contends, required by the evidence to be in its favor. It was therefore necessary that correct instructions be given the jury. It is undisputed that all the collaterals were closed out at the bottom of the market on December 9th. Under Schmid's testimony a verdict for damages could have been had in some amount. The judge charged the jury that the liability for the sums due upon the note was admitted, and that the jury had only the cross-action to try, and that in order for the defendants to recover on it in the event there was such an agreement for notice as entitled them to recover, they must show damages in excess of this admitted debt, and that they could recover only the difference between the amount due on the note and the amount of the damages. These instructions would have been correct if the jury had been given the task of making a general verdict, but the court gave the jury the written form of verdict which they signed and returned, and his instructions were given as appropriate to it. The effect of the instructions was that the jury should use the form of verdict which they did use in two events, first, if they found that there was no breach of contract by the Bank, and, second, if there was a breach, but the damages did not exceed the amount admitted to be due on the note. It cannot be told which the jury found. If the former, the judgment entered was right. If the latter, it was wrong. If the defendants had suffered any recoverable damages, whether more or less than the admitted indebtedness on the note, the jury ought to have been instructed to find them. The defendants would be entitled to have credited on their admitted indebtedness any amount of damages in excess of the credits which the Bank had entered. We are sure that the confusion in the instructions was inadvertent, and that the exception taken was not understood by the judge. But the instruction given was clearly erroneous and the exception to it in our opinion was sufficient, and serious injury may have resulted. We cannot tell whether the jury found that the Bank had a right to close out the collaterals as it did and that no damages were recoverable, or whether they found otherwise but that the damages did not exceed the amount admitted to be due on the note. A new trial must result.

The judgment is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.